Leonard P. Sasso v. Commissioner.
Sasso v. Commissioner
Docket No. 85672.
United States Tax Court
T.C. Memo 1961-216; 1961 Tax Ct. Memo LEXIS 128; 20 T.C.M. (CCH) 1068; T.C.M. (RIA) 61216; July 31, 1961
*128 Sidney B. Gambill, Esq., 747 Union Trust Bldg., Pittsburgh, Pa., for the petitioner. Leo A. Burgoyne, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency in income tax of $5,173.89 for the year 1957. The sole issue presented is whether petitioner operated a dog kennel as a business during 1957. Findings of Fact Some of the facts have been stipulated and are so found. Petitioner, an individual, filed his 1957 income tax return on a cash basis with the director of internal revenue at Pittsburgh, Pennsylvania. Petitioner's principal business since 1923 has been the coal business. From 1923 to 1932 he bought and sold coal. In 1932 he became engaged in strip-mining coal. From 1947 to 1952, he was also engaged in deep-mining coal. Petitioner has been interested in bird hunting since 1910 and has used from one to three dogs for such hunting. In 1949 he decided to start raising bird dogs after discussing such a venture with different trainers whom he would meet at field trials. He was told that such a business would be profitable if he could get good dogs and a good strain. *129 In 1949 or 1950, petitioner purchased a male dog by the name of Flashlight's Big Ben for $1,000 and a female dog, Trebors Duchess, for $250. In 1954, Flashlight's Big Ben, then seven years old, won the Lake States Grouse Championship. Trebors Duchess won two trials, the Pennsylvania Championship and the Grand National Championship. Petitioner started to breed Flashlight's Big Ben in 1954; however, after producing two to four litters he died. By 1957 petitioner had 55 to 60 dogs. From 1954 to 1956 petitioner employed a trainer who was experienced in training coon hounds and was then starting to train English Setters. This trainer located in Cumberland, Maryland, was paid $250 per month at the start and was later raised to $300 per month. However, when this trainer did not produce any well-trained dogs and after 11 or 12 died from distemper and hepatitis, petitioner decided to move the dogs to his farm at Burgettstown, Pennsylvania. The farm at Burgettstown, aggregating 460 acres, was purchased by petitioner for the purpose of strip mining coal. Petitioner did not conduct any ordinary farming operations on the farm and it was overgrown with weeds. At the Burgettstown farm, petitioner *130 had a house and a tenant house which he converted into a kennel. He maintained an employee at the farm to feed the dogs and start training them by exercising them on the farm. Following the advice of the head veterinarian at Penn State University, petitioner arranged his kennel so that the dogs had from 75 to 150 feet of cable to allow them to run and exercise with a barrel at the end of the cable in which to sleep. Planks were attached to posts to provide shade for the dogs. When petitioner was in Pittsburgh, which was about two-thirds of the time, he would go to the kennel from one to four times a week to observe the dogs and the progress that was being made. In the fall, he hunted with some of the older dogs in addition to training some of the younger ones. Those dogs he considered good prospects were sent to outside trainers who were paid a monthly fee for each dog. The kennel produces seven to ten litters each year and the pups are raised until it appears that they do not have the right features. There is a continual process of elimination trying to obtain bold, strong, well-built dogs. A record is kept of all the dogs, but petitioner only registers those dogs which he thinks *131 are good enough to enter trials. The income realized and the expenses incurred in operating the dog kennel from 1950 to 1960 are as follows: Year
Income
Expenses
1950
$ 1,983.25
1951
$ 25.00
1,949.17
1952
2,300.59
1953
3,433.70
1954
1,000.00
7,025.46
1955
7,685.71
1956
75.00
9,669.71
1957
400.00
10,574.20 [1]
1958
335.00
13,509.27
1959
182.90
9,965.62
1960
185.00
10,294.89
These expenses include wages, food and medicine, kennel improvement, fees for outside training, travel expenses, and membership and subscription fees. Such expenses do not include petitioner's expenses in traveling to the kennel to train the dogs or his expense in transporting them to field trials. The Commissioner determined that the $6,782.80 claimed by petitioner on his 1957 income tax return as a loss on the operation of the kennel was not an allowable deduction. Petitioner established and operated the kennel as a business. Opinion The basic facts in this case are not in dispute. The controversy concerns the ultimate question of whether all the facts *132 and circumstances indicate that petitioner operated the dog kennel as a business during 1957. The Commissioner contends that petitioner operated the kennel for his own personal reasons. He points to the recurrence of losses throughout the duration of the kennel operations as indicative of the fact that it was not operated as a business. Although the recurrence of losses is a factor to be considered, "The whole question here is to determine whether, as a matter of fact, the intention of the petitioner has been to realize a profit from the operation of this [kennel], and this question may not be determined solely from the recurrence of losses". . The fact "that substantial losses, rather than some net profit, have resulted does not prevent the enterprise from being a business within the meaning of the statute". (C.A. 4, 1939). "The real test is whether the operation was carried on as a business for gain or whether it was carried on for recreation or pleasure". . See also *133 (C.A. 3, 1929); (C.A. 2, 1933); (C.A. 3, 1934); (C.A. 5, 1939). Petitioner was well acquainted with bird dogs, having utilized them for hunting for over 40 years, and having also participated in field trials. His uncontradicted testimony was that he made inquiry of numerous trainers whom he met at field trials concerning the chances of profit from such a venture. He was advised by these trainers that there were definite profit possibilities if he could obtain good dogs and a good strain. He purchased two dogs of proven ability and hired an experienced trainer to conduct the kennel operations. In 1956 after a number of dogs had died from distemper and hepatitis, and petitioner thought it evident that the trainer was not producing the quality of dogs necessary to profitably operate a kennel, petitioner moved the dogs to a farm he had purchased for strip mining. Kennels were constructed following the instructions of the head veterinarian at Penn State University. An employee was hired to feed and exercise the dogs. Petitioner made numerous *134 trips from his home in Pittsburgh to the farm in order to take an active part in the training and he sent those dogs he thought to be good prospects to other trainers for more advanced training. In addition petitioner maintained records of all the expenses incurred in the kennel operations. We think that the foregoing facts clearly demonstrate that the kennel was established and operated as a business. . Cf. ; , affd. (C.A. 2, 1935). Decision will be entered under Rule 50. Footnotes
1. Of the $10,174.20 loss sustained in 1957 petitioner claimed $6,782.80 as a deduction.↩